# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD
O'MALLEY, KEN LAMBERT, GERARD SCARANO,
H. J. BRAMLETT, EUGENE GEORGE, PAUL
SONGER, CHARLES VELARDO, MATTHEW
AQUILINE, GREGORY R. HESS, MICHAEL
SCHMERBECK, VINCENT DELAZZERO, and BEN
CAPP, JR., as Trustees of, and on behalf of, the
BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND,
   1776 Eye Street, NW, Fifth Floor
   Washington, DC 20006
   (202) 783-3788,

BRICKLAYERS AND ALLIED CRAFTWORKERS
INTERNATIONAL HEALTH FUND
   1776 Eye Street, NW, Fifth Floor
   Washington, DC 20006
   (202) 783-3788,

INTERNATIONAL MASONRY INSTITUTE
   1776 Eye Street, NW, Fifth Floor
   Washington, DC 20006
   (202) 783-3788,

    and

INTERNATIONAL UNION OF BRICKLAYERS AND
ALLIED CRAFTWORKERS
   1776 Eye Street, NW, Fifth Floor
   Washington, DC 20006
   (202) 783-3788,

         Plaintiffs,

         v.

ARLINE LLC
   308 Mickle Boulevard
   Camden, NJ 08103,

         Defendant.

CASE NUMBER  1:06CV00218

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Labor/ERISA (non-employme:

DATE STAMP: 02/07/2006

Civil Action No.

COMPLAINT

DSMDB.2040190.1

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP, complaining of the Defendant, allege as follows:

## CAUSE OF ACTION

### Jurisdiction and Venue

1.    This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF"), the fiduciaries of the Bricklayers and Allied Craftworkers International Health Fund ("IHF"), and the fiduciaries of the International Masonry Institute ("IMI"), to enforce the terms of the Plan and Trust Agreements adopted by the IPF, IHF, and IMI and the provisions of Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145.  This action arises under the laws of the United States, specifically Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).   Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court. As to the claims brought by the International Union of Bricklayers and Allied Craftworkers ("BAC"), jurisdiction is conferred under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

2.    The IPF, IHF, and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF, IHF, and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

DSMDB.2040190.1

3.    BAC maintains its principle office in the District of Columbia. Venue for the claims asserted by the BAC is therefore conferred on this Court pursuant to 29 U.S.C. § 185(c)(1).

**Parties**

4.    Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Ben Capp, Jr., are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

5.    The IPF is also authorized to effect collections on behalf of the IHF and BAC, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

6.    Plaintiff, IHF, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

7.    Plaintiff, IMI, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

8.    Plaintiff, BAC, an unincorporated association, is a labor organization within the meaning of 29 U.S.C. § 152(5) and is entitled to bring suit under 29 U.S.C. § 185.

DSMDB.2040190.1

9.     Defendant, Arline, LLC, is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of New Jersey.

10.     Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

11.     Arline, LLC, through its authorized agent or officer, executed a collective bargaining agreement with the Union. That collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement".

12.     Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF, IHF, IMI, and BAC on behalf of covered employees of Defendant.

13.     Upon information and belief, Defendant has failed to submit required reports and contributions for work performed pursuant to the Agreement.

14.     Accordingly, Plaintiffs have been forced to estimate the amounts due the IPF, IHF, IMI and BAC by Defendant.

15.     Upon information and belief, Defendant began performing work pursuant to the Agreement in February 2005, employing two or three employees, each working an eight-hour work day. Plaintiffs estimated the total hours worked by Defendant's employees during the months of March 2005 through November 2005 by multiplying two employees times eight hours per day times the number of working days in each specific month from March 2005 through November 2005. This calculation provided Plaintiffs the total of estimated hours worked by Defendant's employees in each month. That number was then multiplied by the applicable hourly rates payable

4

to the Fund in order to calculate the estimated contributions and dues checkoff due the Fund.

16.     The total of estimated contributions due the IPF, IHF, and IMI by Defendant for work performed during the months of March 2005 through November 2005 amounts to $23,408.00.

17.     Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF, and IMI, interest in the amount of $1,681.20 at 15% per annum and liquidated damages in the amount of $4,547.84, calculated from the Due Date at the rate of 20 percent as provided for by ERISA, have been assessed on the delinquent contributions payable to the IPF, IHF, and IMI for work performed by Defendant's employees during the time period March 2005 through November 2005.

18.     Defendant also owes the BAC delinquent dues checkoff moneys in the amount of $915.04, and interest in the amount of $64.73, for work performed by Defendant's employees during the time period March 2005 through November 2005.

19.     To date the delinquent contributions, dues checkoff, interest, and additional computation of interest due and owing have not been paid.

20.     Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

DSMDB.2040190.1

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $30,866.81, which is constituted as follows:

    a.  For delinquent contributions in the amount of $23,408.00 payable to the IPF, IHF, and IMI for the time period March 2005 through November 2005 (ERISA Section 502(g)(2)(A); Collection Procedures);

    b.  For interest in the amount of $1,681.20 assessed on such delinquent contributions, calculated at 15 percent per annum from the Date Due (ERISA Section 502(g)(2)(B); Collection Procedures);

    c.  For liquidated damages in the amount of $4,547.84 assessed on delinquent contributions owed to the IPF, IHF, and IMI (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

    d.  For dues checkoff moneys owed to the BAC in the amount of $915.04 (29 U.S.C. § 185; Collection Procedures);

    e.  For interest in the amount of $64.73 on such delinquent dues checkoff moneys (29 U.S.C. § 185; Collection Procedures);

    f.  For the costs of filing this action in the amount of $250.00 (ERISA Section 502(g)(2)(D));

2.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.  That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF, IHF, IMI, and BAC all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

6

4. Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: _February 7_, 2006

By:_____
Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO MORIN
Charles V. Mehler III, DC Bar No. 475909
 & OSHINSKY LLP
2101 L Street, NW
Washington, DC  20037-1526
(202) 828-2234

Attorneys for Plaintiffs

7

NJ 0424

# STATE OF NEW JERSEY
## RESIDENTIAL AND LIGHT COMMERCIAL AGREEMENT
### Between
## THE MASONRY CONTRACTORS OF NEW JERSEY
## THE BUILDING CONTRACTORS ASSOCIATION of NEW JERSEY
### And
## INTERNATIONAL UNION of BRICKLAYERS and
## ALLIED CRAFTWORKERS
## LOCAL UNIONS No. 4, 5 of NEW JERSEY AND LOCAL No. 2 DELAWARE/NJ

To improve mobility of manpower, to increase efficiencies and competitiveness, to foster the principles of collective bargaining, to promote closer working relationships between BAC Local Unions #4, 5 of New Jersey and Local Union #2 Delaware/NJ and signatory employers, to eliminate strikes and lockouts, to provide a peaceful means for settlement of grievances and disputes, to encourage masonry training programs, to promote safe working sites, and to ensure uniform area wage rates, hours, and conditions of employment, we, BAC Local Unions #4, 5 of New Jersey and Local Union #2 Delaware/NJ, the Masonry Contractors of New Jersey, the Building Contractors Association of New Jersey hereby, do adopt, this state of New Jersey Residential and Light Commercial agreement as the basis of our relations. A principle of this agreement is that a fair day's work shall be provided for a fair day's pay.

The International Union of Bricklayers and Allied Craftworkers shall hereinafter be referred to as the BAC or the International Union. Local Unions No. 4, 5 of New Jersey and Local #2 Delaware/NJ shall hereinafter be referred to collectively as the Union. The union residential and light commercial administrative office shall herein after be referred to as the UAO. The Masonry Contractors of New Jersey, the Building Contractors Association of New Jersey shall herein after be referred to as the "Association". Members of the Associations and individual employers who become signatory to this agreement shall herein after be called the "employer". Each employer on whose behalf this agreement has been developed and each future employer who becomes a party by signing the agreement, shall individually be liable and responsible for its own acts and conduct and for any breach or alleged breach of this agreement.



RECEIVED

AUG 1 2005

COLLECTIVE BARGAINING
SERVICES

NJ 0424

# ARTICLE I
## DURATION – TERMINATION – AMENDMENT

This agreement originally executed on the first day of October 1988 between the Masonry Contractors of New Jersey, the Building Contractors Association of New Jersey and former BAC Residential Local # 24 and amended to be effective the first day of November 2004, shall continue in full force and including the thirty-first day of October 2007, and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new agreement, in whole or in part, is given by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or anniversary date thereafter. If the parties fail to reach an agreement in such negotiations, the issues in dispute shall be submitted to the International Masonry Institute's Dispute settlement plan for such steps that are deemed appropriate in accordance with the procedures of the plan. The parties may at any time mutually agree to change or amend any part of this agreement and such changes or modifications shall not effect the continuing nature of this agreement.

# ARTICLE II
## SCOPE

This Agreement shall be in effect within the boundaries of the State on New Jersey. It is agreed that all work performed under the Bricklayers' National Agreement for Acid Tile Tanks Chests and Linings, Bricklayers' National Agreement for Stacks-Chimneys-Silos. Bricklayers' National Agreement for Refractory Construction, Cement Masons' National Agreement for Stacks-Chimneys-Silos, Cement Masons' National Agreement for Natural Draft Cooling Towers, General Presidents Project Maintenance Agreement, International Panelization Agreement, National Maintenance Agreement, The Nuclear Power Construction Stabilization Agreement and any other project agreement negotiated by the Building and Construction Trades Department AFL-CIO or its affiliates is specifically excluded from the terms of this agreement.

This agreement shall apply to Residential and Light Commercial Projects which are bid and/or negotiated after the effective date of this agreement. Residential projects are defined for the purpose of this agreement as projects involving the construction, alteration, or repair of single family houses or apartment buildings of no more than (4) stories in height. This includes all incidental items such as parking areas, streets, and sidewalks.

Light commercial projects are defined for the purpose of this agreement as projects of $900,000.00 or less, that includes all construction of such structures. The installation of utilities and the installation of equipment both above and below grade level as well as incidental grading, utilities, and paving. The artificial staging of projects in order to qualify for the light commercial rates and conditions shall not be permitted.

NJ 0424

These projects are targeted towards those jobs where the developer, owner or contractor traditionally bid or contracted out masonry work to non-union, or as mutually agreed to by the union and the employer.

The Employer shall notify The Joint Committee when it has successfully bid a light commercial project, which it intends to perform under this agreement. Upon request of the committee the employer shall furnish the committee the F.W. Dodge report (or similar report) of the successful low bidder on the project.

A. This Agreement covers construction work within the jurisdiction of the International Union, as defined in the Constitution of the International Union, as well as all performed by employees represented by the International Union of Bricklayers and Allied Craftworkers.

B. The Employer agrees to assign to employees, Journeyman, BAC Trainees, and support personnel represented by BAC all work which has been historically or traditionally assigned to members of the International Union of Bricklayers and Allied Craftworkers, including but not limited to: all forms of masonry construction, including all brick, stone, concrete, block, glass block, and pointing-cleaning-caulking work, exterior insulation systems such as Dryvit, and like systems applied at the job site or erected in panel form, the complete installation of all forms of masonry panels including the off and/or onsite fabrication, all integral elements of masonry construction and all forms of substituted materials or building systems thereto utilized in all forms of construction, maintenance, repair, and renovation.

C. Autoclaved Aerated Concrete Masonry Units (AACMU). The Bricklayer shall perform the complete installation and related finish work of all AACMU. These operations include, but are not limited to; the cutting, fitting and applications of mortar and/or other cementitious materials used for the setting and bonding purposes as well as the actual laying of the AACMU block units into position. The routing, drilling, cutting and patching for all mechanical piping and openings. The preparation, assembly, unloading, selecting or staging of AACMU panels, hooking on, signaling, drilling, cutting, installation of support angles or strut supports, fitting, bedding, landing, setting, leveling, plumbing, aligning, fastening, anchoring (whether by bolt, clip, pin, or weld), insulation, caulking, grouting, patching, cleaning, waterproofing and installation of all AACMU units. This also includes all work operations related to the installation and applications of all coating, covering and veneer systems (both exterior and interior) on all AACMU units. These work operations include, but are not limited to: preparations of walls, the mixing and applications of any and all finish coating materials by any method (i.e. trowel on, machine, spray on, etc.) or any other device deemed necessary to produce the desired finish surface.

D. In addition, the Employer agrees to assign to employees represented by BAC all other work assignments mutually agreed upon between the Employer and the Union and all such work shall be covered by this agreement.

## ARTICLE III
## MANAGEMENT, RECOGNITION, AND RIGHTS

NJ 0424

The Union hereby recognizes and acknowledges that job-site discipline is the responsibility of the Employer. Except as otherwise provided herein, the Employer shall have the right to hire, fire, suspend, or discipline for just cause, direct the working force, and to manage its business in accordance with its best judgement.

## ARTICLE IV
## UNION RECOGNITION, UNION SECURITY, ACCESS

A. **Union Recognition-** The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in the classification of work failing within the jurisdiction of the Union, as defined in Article II of this agreement, for the purpose of collective bargaining.

B. **Union Security-** No later than eight (8) days following the effective date of this Agreement, all present employees working under the terms of this agreement, must as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this article shall, upon the request of the Union, result in termination of such employee. The employer shall not be obligated to dismiss an employee for non-membership in the Union: (a) if he has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members, or (b) if he has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

C. **Union Access to Job-** International Union representatives and the Business Manager and/or other representatives of the Local Union shall have access to the Employer's job sites at reasonable times in compliance with any reasonable rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed, provided, however, that such representatives shall not unduly interfere with the job progress.

## ARTICLE V
## RESIDENTIAL AND LIGHT COMMERCIAL EMPLOYEES-COMMERCIAL EMPLOYEES

A. It is understood by the Union that the Employer desires to maintain a permanent workforce of steady employees, who shall be defined for purposes of this Agreement as "residential and light commercial employees". Including BAC trainees, hired with the expectation that they shall be employed by the Employer on a continuous basis to the extent that work is available on projects throughout the state of New Jersey.

B. It is agreed that the Employer may, in addition to those residential and light commercial employees described in Section A of this article, hire employees, who

shall be defined for purposes of this Agreement as "Commercial employees" who reside or are normally employed in the territorial jurisdiction of the Local Union in which the job-site is located. Such commercial employees must be skilled in the type of masonry work to be done by the Employer on the project before they can be referred for employment.

C. The Employer agrees that within thirty (30) days from his execution of this Agreement he will furnish The Union Administrative Office with a signed statement listing its residential and light commercial employees by normal craft assignment, specifying their most recent date of hire. The Employer shall notify, in writing, the UAO of any additions to or deletions from this list within twenty-four (24) hours of such change.

D. Any charges of violations of this article shall be processed in accordance with the procedure for handling grievances as described in article V of this Agreement.

## ARTICLE VI
## HIRING, FOREMAN, STEWARDS, BAC TRAINEES

**A. HIRING**

1. The Employer agrees that the Union Administration Office shall be the exclusive and sole source of employees. The Employer may request by name, specific individuals who will be referred, if available.

2. The parties agree that if the UAO is unable within forty-eight hours of a request, excluding weekends and holidays, to refer the skilled employees required for the project, then the Employer is free to secure the additional employees necessary to complete the project. If the UAO is unable is unable to refer employees within forty-eight (48) hours and the Employer secures additional employees, he will within the twenty-four (24) hours, from the time of hire, excluding weekends and holidays, furnish the UAO with a signed statement listing its new employees by name, social security number, classification, date of hire, and location of job-site. The UAO agrees whenever requested, to assist the Employer in securing the craftworkers required to meet the specific project manpower needs. The Employer shall be permitted to recruit additional skilled employees from other areas for the project if the UAO cannot provide the required number of employees.

3. It is understood that the Employer shall have the right to determine the competency and qualifications of applicants referred by the UAO. The selection of applicants for referral to jobs shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulation, constitutional provisions or any other aspect or obligation of Union membership, policies, or requirements. Nor shall the selection or hiring of such employees be based on or in any way effected by race, creed, color, sex, age, or national origin.

B. Where five or more employees including BAC trainees are employed on a job one of them shall be the foreman. The foreman shall be selected by and be the representative of the Employer, and shall be a journeyman mechanic of the trade they supervise.

C. The Employer shall hire a steward appointed by the UAO on all jobs. The steward shall be a working employee and shall, when appointed, be granted reasonable time to conduct union business.

D. In order to train sufficient skilled mechanics for the needs of the masonry industry, the necessity for employment of BAC Trainees is recognized and encouraged by the parties to this Agreement. It is agreed that the Employer shall abide by the National Apprentice Standards developed for the masonry craft training.

E. Residential and Light Commercial BAC Trainees recruited into the Local as of November 1st 2004, or later, will be placed at a wage rate based upon an evaluation conducted by the International Masonry Institute.

BAC Trainees signed prior to November 1st, 2004 will have the option to be evaluated and placed according to the International Masonry Institute's evaluation and scoring system.


**ARTICLE VII**
**WAGES, PAYDAY, TRAVEL, AND SUBSISTENCE**

A. The hourly wage rate for employees classified as residential and light commercial employees performing work covered under this Agreement shall be as follows:

See Attached Wage Sheet

1. All employees shall be classified as residential and light commercial employees unless it is mutually agreed between the Employer and the Union that specific employees should classified as Commercial Employees.

2. On strictly residential projects, Commercial Employees shall receive same wage and fringe package as residential employees. This applies to any and all Commercial Employees working for any contractor signatory to this Agreement. Any deviation from this is addressed in Article XI, section B: 1-4.

3. The hourly wage rate for employees classified as foreman shall be not less than one dollar ($1.00) higher than the wage rate for journeyman employees.

B. The Union shall have the option of allocating a portion of the wage rates among the various benefit funds specified in Article IX.

C. All employees working under this Agreement shall be paid in cash or by check weekly on Friday before quitting time and within 72 hours after the closing of the pay

6

NJ 0424

for the week. An employee being laid off shall be given his final paycheck in full for all hours of employment one hour before layoff.

**D.** **Travel and Subsistence-** Normally the Union Administrative Office will provide the necessary workforce for all projects throughout the State of New Jersey and no travel pay will be paid. In certain geographic areas involving long distances between project job-sites and employee residences, travel pay will be established before the work commences by the employer and UAO on a "per-job" basis. Employees referred to jobs shall report to a location designated by the Employer.

When requested to stay away from home overnight, the employee shall be reimbursed for meals and lodging at reasonable rates to be established before the work commences by the Employer and UAO on a "per-job" basis.

## ARTICLE VIII
## HOURS OF WORK, OVERTIME, SHIFTS, AND HOLIDAYS

**A.** The standard work day shall consist of eight (8) hours of work between the hours of 7:00 a.m. and 5:30 p.m. with 30-minute unpaid lunch hour occurring the middle of the shift. The standard workweek shall consist of five standard workdays commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

1. Except as provided in Section 2 and 3 below, all time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturday shall be paid for at the rate of one and one half times the base wage rate in effect. All time worked on Sundays and on holidays specified in Section C of this article shall be paid for at the rate of double the hourly base rate in effect.

2. At the option of the Employer, Saturday may be used as a make up day for hours lost due to weather conditions or conditions beyond the control of the Employer. Employers desiring to utilize this provision must provide the Union Administrative Office and employees performing work under this agreement on that project twenty-four (24) hours notice prior to invoking this schedule. Employers utilizing Saturday to make up to lost time, must provide employees with the opportunity to work eight (8) hours. When an employee of his own accord fails to work on any day or any part of any day of the workweek Monday through Friday, then such employee, if he works on Saturday of the week during which such absence occurs, shall be paid the straight time rate, provided that all time worked before and after the established eight (8) hour work day Monday through Saturday or more than forty (40) hours of straight time work per week shall be paid one and one half times the base wage rate in effect.

3. At the option of the Employer a ten hour four day work week schedule may be utilized and Friday may be used as a make up day for hours lost due to weather conditions or conditions beyond the control of the Employer. Employers desiring to utilize this provision must provide the UAO and employees performing work covered by this agreement on that project twenty-four (24) hours notice prior to invoking this schedule. Employers utilizing Friday to makeup for lost time, must provide employees with the opportunity to work eight (8) hours. When an employee of his own accord fails to work on any day or part of any day of the workweek Monday through Thursday, then such employee, if he works on Friday during the week during which such absence occurs, shall be paid the straight time rate, provided that all time worked before and after the established ten (10) hour work day Monday through Thursday or in excess of eight (8) hours on Friday or more than forty (40) hours of straight time work Monday through Friday and all time worked on Saturday shall be paid one and one half times the base wage rate in effect.

4. Employees shall not be discharged or disciplined for refusing work scheduled outside the standard workday or standard workweek including denial of unemployment compensation. Any employee discharged or disciplined for refusing such work shall be made whole for his loss by the Employer.

**B. Shifts-** Shift work may be performed at option of the Employer, but when performed it must continue for a period of not less than five consecutive work days, Saturday and Sunday, if worked can be used for establishing the five day minimum shift work period. The straight time workweek shall be considered to start with the day shift on Monday and end with the conclusion of the second or third on the fifth day. In the event the second or third shift of any regular workday shall extend into a holiday, employees shall be paid at the regular shift rate.

1. The first shift shall be regular day shift insofar as computing wage payments is concerned, and the first day shift shall work regular eight hour shift, with a one half hour unpaid lunch period through the shift.

2. If two work shifts are established, the second shift shall consist of seven and one half hours of continuous work, with a one half hour unpaid lunch period midway through the shift. Employees working on the second shift shall receive eight hours times the base straight time rate plus $.25 for each of those eight hours.

3. If two work shifts are established, the third shift shall consist of seven hours of continuous work plus one half hour unpaid lunch period midway through the shift. Employees working on the third shift shall receive eight hours times the basic straight time rate plus $.50 for each of those eight hours.

4. Time worked in excess of seven and one half on the second shift and seven hours on the third shift shall be paid at the appropriate overtime rate.

8

NJ 0424

5.  In computing overtime pay on shift work, the overtime rate of pay shall be based upon the wage rate established for the shift involved less the shift differentials.

C.  The Employer agrees to recognize the following holidays: New Years Day, President's Day, Memorial Day, Independence Day, Labor Day, Veterans Day, Presidential Election Day, Thanksgiving Day, and Christmas Day.

# ARTICLE IX
# JOINTLY TRUSTED FUNDS

1.  In addition to wages and other payments herein provided for, the Employer agrees to pay the specified contributions to the following designated funds.

A.  Bricklayers and Trowel Trades International Pension Fund.

(1)  The contribution to the Bricklayers and Trowel Trades International Pension Fund (IPF) shall be a total of one dollar and fifty cents ($1.50) for each hour or portion thereof, of which a covered employee receives pay.

(2)  The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

B.  Bricklayers and Trowel Trades International Health Fund.

(1)  The contribution to the Bricklayers and Trowel Trades International Health Fund shall be a total of five dollars and forty cents ($5.40) for each hour or portion thereof, for which a covered employee receives pay. (See attached wage sheet for increases).

(2)  The payments required above shall be made to the Bricklayers and Trowel Trades International Health Fund, which was established under an Agreement and Declaration of Trust, dated 5 July 1988.

C.  **Annuity-** Beginning November 1, 1995 contributions on behalf of all covered employees, will be made to the Bricklayers and Trowel Trades International Retirement savings plan. (See attached wage sheet for amounts per hour).

**D. International Masonry Institute**
(1)  The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotions, research and development, and labor/management relations, which must be met if the industry is to grow and prosper. The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single region/international system.

NJ 0424

(2) In order to properly finance IMI programs, the ultimate objective is to provide, through collective bargaining contributions equal to three per cent of the basic wage, however, this figure is a goal that can only be reached in stages over a period of time.

(3) As contributions from this geographical area increase, IMI will be able to devote a portion of those monies to advertising and promotions, research and development, apprenticeship and training, and labor/management relations programs directed specifically to this area.

(4) In this agreement, the parties intend to take a first step toward the overall objective by establishing a realistic level of support for IMI. With these principles in mind, the parties agree as follows:

(A) Effective 1 November 2004, the contribution to the International Masonry Institute shall be twenty cents ($.20) for each hour, or portion thereof, for which a covered employee receives pay. (See attached wage sheet for increases).

(B) In addition, there shall be the implementation of an Industry Advancement Fund contribution of $.11 per hour effective November 1, 2004 as defined below:

**E.  Industry Advancement Fund**
The parties hereto do hereby establish an Industry Advancement Fund in accordance with the Industry Advancement Fund Trust Agreement and Declaration of Trust pursuant to the requirements of the Labor - Management Relations Act, the Internal Revenue Code and all applicable laws and the agreement of the parties for the purpose, in all lawful ways, of promoting the increase of residential and light commercial, institutional, public and industrial building construction throughout the State of New Jersey and the adjoining areas within the territorial jurisdiction of the unions by providing building owners, architects, engineers, builders, contractors, private and public funding institutions and agencies, government agencies and any others, directly or indirectly, with the building construction industry information, data and other information to communicate the advantages of sound, durable and economical construction that will provide a high degree of service, utilization and benefit to the public by the utilization of union affiliated contractors. The purpose of the Fund shall be to foster and promote the continued utilization and expansion of union construction, particularly utilizing union members of the Bricklayers & Allied Craftworkers union, in prospective projects throughout the State of New Jersey.

In order to carry out this agreement, the parties hereto shall execute such agreements of trust and other documents necessary in accordance with law, which documents shall include the following terms which are agreed to and incorporated into this contract:

1. The Employer shall make contributions for each hour worked by each member of the Bricklayers & Allied Craftworkers union to the Industry Advancement Fund created hereby.

NJ 0424

2. Effective November 1, 2004, the Masonry Contractors of New Jersey and the Building Contractors Association of New Jersey agree to allocate $.01 of the Industry Advancement Fund contribution to the International Council of Employers of Bricklayers & Allied Craftworkers (I.C.E.). Said contribution shall be forward to I.C.E. by the Masonry Contractors of New Jersey. The remaining contribution shall be divided as follows:

> Masonry Contractors of New Jersey: 50%
> BCANJ:                              50%

In such case as the parties opt to discontinue the $.01 allocation to I.C.E., said $.01 contribution shall be distributed equally between the Masonry Contractors of New Jersey and the Building Contractors Association of New Jersey.

3. The Masonry Contractors of New Jersey and the Building Contractors Association of New Jersey shall utilize said funds in a manner consistent with the terms of the trust including the lease or purchase of materials, supplies and equipment, the lease of premises or purchase of premises, the employment and retention of professional counsel, the engagement of administrative and other employees, and all other appropriate expenses and expenditures which comply with the purposes of the trust and law. However, in all circumstances, it is the intention hereto that the said Fund shall be used to promote the following industry wide activities for the benefit of the contractors utilizing members of the Bricklayers & Allied Craftworkers union including accident prevention, education, research, public relations, industry relations, labor relations, market development, standardization of contracts and specifications and all other such appropriate activities.

4. Although the Industry Advancement Fund is designated a "contribution" it is expressly understood and agreed that the said sum payable to said Industry Advancement Fund is not intended to be and is not a contribution to employees and no employee of Employer has any proprietary interest in said funds.

5. The Industry Advancement Fund shall pay the Bricklayers & Allied Craftworkers' local with jurisdiction over the job site, Local No. 4, 5 or 2, 2% of all amounts collected as reimbursement for expenses incurred in connection with the collection services rendered. In addition the Bricklayers & Allied Craftworkers' Local No. 4, 5 of New Jersey and Local #2 Delaware/NJ shall not be responsible for collection of any delinquent amounts owed by any employer.

**Section 2-** The Employer hereby agrees to be bound by and to the above stated Agreements and Declaration of Trusts, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trusts.

NJ 0424

**Section 3-** The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

**Section 4-** For the purpose of this Article, each hour paid for, and all other hours for which pay is received by the employee in accordance with this agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

**Section 5-** Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeymen, BAC trainees, helpers and probationary employees.

**Section 6-** All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the time books, payroll, and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section 1 of this Article. Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audit.

**Section 7-** If the Employer fails to make any contribution specified in this Article, within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this agreement.

## ARTICLE X
## LOCAL AGREEMENTS

A. Whenever the Employer participates directly in local negotiations, he shall be affected by the events which occur during that process including any economic action and shall be bound to the terms of any agreement that is consummated from such negotiations, which are not in conflict with the provisions of this Agreement.

B. Whenever the Employer works in an area where he does not participate directly in local negotiations, there shall be no stoppage of work on the Employer's project by the Local Union or any lockout by the Employer by reason of any dispute over wages, benefit contributions, or working conditions which may occur between the Local Union and contractors other than the employer.

NJ 0424

1. When the Employer, in order to meet residential or light commercial manpower needs hires commercial employees as defined in Article V.B. of this agreement, the employer shall pay all benefit fund contributions to the home trust funds designated by such employees at the applicable home trust fund rates.

   **(I)**     Each commercial employee shall file within the Employer a statement on a form prepared by the Union designating his or her home trust funds.

   **(II)**    The Employer agrees to be bound by the terms, conditions, and provisions of such home trust fund agreements (copies of which will be available to the Employer upon request), and to make the contributions called for to said funds at the rate and in the manner specified; to irrevocably designate as its representatives on the board of trustees of such trusts, such trustees as are named in said agreements as employer trustees, together with their successors selected in the manner provided in said agreements, and to be bound by all actions which are not in conflict with the terms of this agreement taken by said trustees pursuant to the said agreements.

   **(III)**   The Employer agrees to furnish upon request of the Union verification of the payments of said contributions to home health and welfare, pension, annuity, and vacation plans. The Union and applicable trust funds shall have the right to audit the Employer's records to determine that the proper wage rate and fund contributions have been made in accordance with the terms of this agreement.

2. Nothing contained in the paragraphs above is intended to require the Employer to become signatory to a collective bargaining agreement, nor is any signatory Employer required to assign his bargaining rights or become a member of any local employer group or local association as a condition for making such contributions.

3. The Employer agrees to sign upon the request of the home base fund administrator an assent of participation agreements covering the home benefit contributions.

### ARTICLE XI
### ADMINISTRATION OF AGREEMENT

A. The Union and the Employer agree that a major objective of this Agreement is to increase the employment opportunities for the membership of the Union and to encourage signatory Employers to bid and negotiate for more masonry projects in order to expand the amount of masonry work being done under the terms of collective bargaining agreements. The Union and the Employer agree to aggressively work together with the greatest degree of cooperation possible to achieve these goals. The Union and the Employer, through cooperative efforts, agree to discourage project delays, loss of wages, and impediments to job-site progress, which could result in lost employment opportunities.

B. In order to further these principles the Union and Employer agree:

1. To cooperate in meeting conditions peculiar to a job or protect on which the Employer may be bidding, negotiating, or have under contract. They will at all times meet to confer respecting any questions or misunderstanding that may arise under the performance of this Agreement.

2. That whenever the Employer is bidding or negotiating for a masonry project where non-union competing work forces are determined to be the likely contractor for the project, the Union will meet with the Employer to consider, special conditions for that project for signatory Employers and employees represented by the Union.

3. That the Union will consider, special conditions of employment and rates of wages and contributions on projects which require the Employer to cover and heat all or major portions of a masonry project in order to provide full-time continuous employment for employees represented by the Union.

4. That any special conditions of employment or wage and contribution rates granted under the provisions of this Agreement for a specific project or geographic area will be available to any and all other Employers signatory to this Agreement for that project or geographic area upon their request.

**C. Joint Committee**
1. To facilitate the implementation of special conditions of employment mentioned in the paragraphs above the parties agree that there shall be established a Joint Committee consisting of four (4) employer representatives, one (1) International Union Representative and the Business Managers of BAC Local Unions No. 4 and 5 New Jersey and Local #2 Delaware/NJ.

The Joint Committee shall have two Co-chairman; one selected by the Association the other International Union Representative assigned to the committee by the International Union. The Joint Committee shall meet regularly on a quarterly basis and at such other times, as the Co-Chairman deems necessary or appropriate. Quarterly meetings may be suspended or postponed by mutual agreement of the Co-Chairmen, except that the Co-Chairmen may not suspend more than three quarterly meetings in succession. The Joint Committee will determine when and how special conditions of employment are to be considered and implemented. The Joint Committee may upon written request, review and when determined necessary, suspend a provision or provisions of this agreement relating to starting times or work schedules when such provisions are found to be inconsistent with the schedule required by an owner or general contractor that has been agreed to by other building trades crafts working on the project. Decisions of the Joint Committee pertaining to special conditions shall be final and binding upon all parties to this agreement.

2. The Joint Committee shall also be charged with promoting an understanding of the needs of the Union and the Employers in the implementation of this Agreement, and to respond to any questions raised regarding the meaning and intent of this Agreement. All decisions of the Joint Committee, which address or clarify the

NJ 0424

meaning and intent of this Agreement, shall be immediately distributed to signatory Employers by the Joint Committee with the understanding that any actions required by such decision will be promptly implemented. Except as provided in Article VIII, Section E, Paragraph 1, decisions of the Joint Committee can only be made to resolve questions or disputes regarding the meaning or intent of specific provisions of this Agreement and cannot be made to add to, omit from, or alter the provisions of this Agreement.

## ARTICLE XII
## INTERNATIONAL MASONRY INSTITUTE
## DISPUTES SETTLEMENT PLAN

The Union, the Association and the signatory Employers agree to recognize, be bound by, and support the International Masonry Institute's Disputes Settlement Plan.

The Plan continues a relationship between labor and management in the masonry industry establishing procedures to improve collective bargaining between the parties in various labor agreements in the industry, to provide joint procedures for the mediation and conciliation of disputes in the negotiations of collective bargaining agreements, and to provide for final resolution of disputes over terms of collectively bargained agreements. Executed copies of the Plan are available upon request to parties signatory to this Agreement.

## ARTICLE XIII
## BONDING

Prior to commencing any work covered by this Agreement, the Employer shall obtain a bond in the amount of $25,000.00 (twenty-five thousand dollars) with a duly qualified bonding company in a form approved by the Union, to secure payment of wages, benefit contributions, and other sums due under this Agreement.

## ARTICLE XIV
## DUES CHECK-OFF / BAC-PAC CHECK-OFF

The Employer shall deduct from the wages of each employee who has signed a check-off authorization form conforming to federal law, and transmit monthly to the applicable Local Union (or to any agency designated by said Local Union for the collection of money), the sum for each hour paid which the Local Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of said employee's union dues to said Local Union, to the International Union, or to any other affiliates of the International Union, subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

NJ 0424

The Employer agrees to deduct an amount from the pay of each employee, who is a Union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC). Deductions shall be in the amount and at the intervals specified on the transmittal BACPAC deductions to the treasurer of BACBAC in care of the Bricklayers and Trowel Trades International Pension Fund. These transmittals shall occur on a basis, and shall be accompanied by a list of the names of those employees for whom BACPAC deductions have been made and the amount deducted for each employee.

The deductions shall continue for the life of this Agreement for those employees who sign BACPAC authorization forms unless they are revoked individually and in writing.

## ARTICLE XV
## GRIEVANCE PROCEDURE

A. It is specifically agreed that any controversy arising during the effective period of this Agreement involving the application or interpretation of any of its terms and conditions, other than a jurisdictional dispute over the assignment of work, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Union Administrative Office by each Employer within five (5) working days after the alleged violation is committed or should reasonably have been discovered.

B. A grievance shall be resolved in accordance with the following procedures:

**Step 1-** The grievance shall be referred to the job-site Union steward and to the Employer's representative at the job-site for settlement.

**Step 2-** If the grievance cannot be settled within twenty-four (24) hours pursuant to Step 1 of this procedure, the grievance shall be referred on the following working day to the UAO and to the Employer's representative.

**Step 3-** If the grievance cannot be settled pursuant to Step 2 of this procedure within three (3) working days, excluding weekends and holidays, the grievance shall be submitted within two (2) working days to the Joint Committee provided for in Article XI of this Agreement which shall attempt to resolve the matter.

**Step 4-** If the matter is not resolved by the Joint Committee, the dispute will be submitted to the International Masonry Institute's Dispute Settlement Plan for resolution under the Plan's operating procedures referred to in Article XV of this Agreement. The decision reached in accordance with the Plan's procedures shall be binding upon all parties.

C. The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties, initiated by a written request of one party to the other, at the appropriate step of the Grievance Procedure. Failure to file or process a grievance within the time limits provided shall be deemed a waiver of such grievance

NJ 0424

without prejudice, but shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

**D.** In order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section B of this Grievance Procedure, the parties agree that such settlement shall not be precedent setting.

**E.** When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties.

**F.** It is expressly understood by the parties hereto that the procedure for adjustment of grievances set out in this Article is exclusive and supersedes and other plan, Method or procedure.

**ARTICLE XVI**
**SUBCONTRACTING**

**A.** The Employer agrees not be sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

**B.** All charges of violations of this Article shall be considered as a dispute, and shall be processed in accordance with the provisions of Article XV of this Agreement covering the procedure for handling of grievances, and the final and binding resolution of disputes.

**ARTICLE XVII**
**PRESERVATION OF WORK**

In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, to protect the benefits to which employees are entitled under this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work and benefits, it is hereby agreed as follows: if and when the Employer shall perform any work of the type covered by this Agreement at any construction site (I) under its own name, or (II) under the name of another entity (whether a corporation, company, partnership, or any other business entity, including a joint venture) wherein he Employer, including its owners and stockholders (other than a corporation that is primarily engaged in industrial production). Officers, directors, or partners exercise either directly or indirectly (such as though family members) any significant degree of ownership, management, or control. The terms and conditions of this Agreement shall be applicable to all such work.

**A.** A charge of violation of this Article may be filed by the Union and/or the trustees of any of the joint trust funds provided for in this Agreement, and shall be considered as

NJ 0424

a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes as provided in Article XII of this Agreement. As a remedy for violations of this Article, the Umpire provided for in Article XII is empowered, at the request of the Union and/or the trustees of the joint trust funds, to require an Employer to (a) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations, and (b) pay into affect contributory funds established under this Agreement or any such funds which have resulted from the violations. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violations of the Article, nor does it make the same or other remedies unavailable to the Union for violation of other sections or other articles of this Agreement. However, the Union expressly agrees that it will not engage in strikes, picketing, or other economic actions to enforce the provisions of this Article.

**B.** If, as a result of violations of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section A above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XVIII
## TRAVELING CONTRACTORS

When the Employer has any work specified in Article II of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect at the job-site area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article VII of this Agreement but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the job-site local agreement. If employees are sent to work on a project in an area where there is no local agreements covering the work specified in Article II of this Agreement, the full terms and conditions of this Agreement shall apply.

## ARTICLE XIX
## NO STRIKE, NO LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XV have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where the Employer fails or refuses to make in whole or in part any payments required under this

NJ 0424

agreement including all wages, fringe benefits or other contributions that have been established through bona fide collective bargaining.

There shall be no stoppage of work on the Employer's project by the Union, or any lockout by the Employer by reason of any dispute which may occur between the Union and a contractor or area contractors other than the Employer, provided that refusal by any employee to pass through a lawfully permitted picket line will not constitute a violation of this Agreement.

## ARTICLE XX
## SAVINGS CLAUSE

If any provision of this Agreement shall violate any applicable stature or is held invalid by any court or governmental agency have jurisdiction, when such provision shall be void in the jurisdiction of such court or agency and the Employer and the Union agree that upon a ruling of invalidity they will renegotiate immediately to replace the voided provision to the extent allowable under the law; such ruling of invalidity shall not affect the validity of the remainder of this Agreement. Where a money item is involved and not substituted is possible, it is agreed that the benefit originally provided shall be replaced with one of equal worth.

## ARTICLE XXI
## SAFETY

The Union and the Employer agree that safety of the workplace is of paramount importance and the Employer and the Union agree to abide by all appropriate federal, state, provincial, and local safety laws and regulations and any and all safety regulations established by an owner or his representative at particular job-site.

## ARTICLE XXII
## GENERAL UNDERSTANDING

This State of New Jersey Residential and Light Commercial Agreement constitutes the entire agreement between the parties for all employees performing work as defined in Article II of this Agreement and any local or area collective bargaining agreement which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement.

The Employer agrees that if it has not previously done so, it will, upon the Union's submission of evidence of majority status among its employees in the bargaining unit described herein, voluntarily recognize the Union as the exclusive representative as defined in Section 9(a) of the National Labor Relations Act, as amended, of all employees within that bargaining unit on all present and future job-sites within the jurisdiction of the Union. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

NJ 0424

## JOB-SITE CONDITIONS

1. FROM JUNE 1 THROUGH SEPTEMBER 15 DRINKING WATER, OTHER THAN A HOSE WILL BE SUPPLIED ON ALL JOBS BY THE CONTRACTOR.

2. APPROPRIATE EXTENSION LADDERS WILL BE SUPPLIED BY THE CONTRACTOR ON ANY JOBS WHERE SCAFFOLDING EXCEEDS TWO SECTIONS IN HEIGHT.

3. 12" BLOCK LAID FROM GROUND OR ON SCAFFOLDING IN EXCESS OF 6 COURSES WILL BE LAID BY A TEAM OF TWO MASONS.

4. SHOW UP TIME- IF THE EMPLOYEES SHOW UP READY, WILLING AND ABLE TO WORK AND CANNOT DO SO DUE TO ANY REASONS OTHER THAN WEATHER, AND NO ADVANCED NOTICE IS GIVEN, THE EMPLOYEES WILL BE ENTITLED TO, TWO (2) HOURS PAY.

5. COFFEE BREAKS- ONE 10 MINUTE MID-MORNING BREAK SHALL BE THE STANDARD PRACTICE.

NJ 0424

**In Witness Whereof,** we the authorized officers of the Masonry Contractors of New Jersey, the Building Contractors Association of New Jersey and the Union have hereunto set forth our hands and seals this _1st_ day of _April_ 2005.

**Authorized Management**
**Bargaining Representatives**

_____
Michael Schmerbeck
Masonry Contractors of New Jersey

_____
Jack Kocsis
Building Contractors Association
of New Jersey

**Authorized Union**
**Bargaining Representatives**

_____
Michael R. Perrone
Bricklayers and Allied Craftworkers
Local Union #5

_____
John Capo
Bricklayers and Allied Craftworkers
Local Union #4

_____
Pete Altadonna
Bricklayers and Allied Craftworkers
Local Union #2



## INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS
## LOCAL'S # 5 & 4 - NEW JERSEY AND LOCAL # 2 - DELAWARE/NEW JERSEY
## RESIDENTIAL AND LIGHT COMMERCIAL

The undersigned Employer has read and hereby approves the signed Collective Bargaining Agreement between the Building Contractors Association of New Jersey and the Masonry Contractors Association of New Jersey dated November 1, 2004, and Bricklayers and Allied Craftworkers Locals No. 4, No. 5 of New Jersey and Local No.2 of Delaware-New Jersey; and any successor Collective Bargaining Agreement subsequently negotiated between said parties and herewith accepts and becomes one of the parties thereto and agrees to be bound by all the terms and conditions of the effective Collective Bargaining Agreement and such successor Agreements as may be negotiated from time to time.

This Agreement and such successor Agreements shall be applicable within the territorial jurisdiction assigned to Locals No. 4, 5, & 2 by the International Union of Bricklayers and Allied Craftworkers. The life of this signed Independent Agreement is to be coextensive with the terms and conditions set out in the aforementioned Collective Bargaining Agreement, or as they shall be set out from time to time in any such successor Agreements as may be negotiated. The employer recognizes the Union pursuant to Section 9(a) of the National Labor Relations Act as the exclusive bargaining agent for all employees within the bargaining unit on all present and future sites within the jurisdiction of the Local Union.

The undersigned Employer further agrees to the payment of all Employee fringe benefit hourly contributions as specified in the effective Collective Bargaining Agreement, or as such hourly contributions may be increased or decreased in accordance with the provisions of the Collective Bargaining Agreement.

The undersigned Employer agrees to be bound by the applicable Declaration of Trust of each Trust Fund and hereby irrevocably designates as its' representative on the Board of Trustees such Employer Trustees together with their successors as selected in the manner provided within the applicable Agreement and Declaration of Trust of each Trust Fund and agrees to be bound by all actions taken by the Board of Trustees pursuant to the provisions of each Trust Fund and agrees to be bound by all actions taken by the Board of Trustees pursuant to the provisions of each Trust Fund, Agreement and Declaration of Trust instrument.

This signed Independent Agreement shall be binding upon the Employer named herein, and its' successor assigns, and no provision herein contained shall be nullified or affected in any manner as a result of a consolidation, sale, transfer, assignment, encumbrance, joint venture, or any combination or other disposition of the Corporation or Company.

_____
**Company Name**

_____
**Physical Street Address**

**Please complete and remit to:**
BAC Local #5, New Jersey
3281 Route 206, Suite 3
Bordentown, NJ 08505
(609) 324-0500
(609) 324-1505 - Fax

_____
**City**                    **State**          **Zip Code**

_____
**Telephone Number**              **Fax Number**

_____
**Federal Identification Number**

_____
**New Jersey Employment Compensation Number**

_____
**Workmen's Compensation Insurance Carrier**

Initial if you have received a full copy of this Collective Bargaining Agreement _____

_____
**Officers Signature**          **Printed Name**              **Date**

_____
**Business Managers Signature**      **Printed Name**              **Date**

_____
**Field Representatives Signature**    **Printed Name**              **Date**

New Jersey
# BRICKLAYERS & ALLIED CRAFTWORKERS
## Local Union #5

NJ 0424

3281 Route 206, Suite 3
Bordentown, New Jersey 08505



Office- (609) 324-0500
Fax- (609) 324-1505

| RESIDENTIAL/LIGHT COMMERCIAL RATES EFFECTIVE NOV 1, 2004 TO OCT 31,2005 | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Journeyman | 95% | 85% | 75% | 65% | 55% | 50% |
| RATE: | $22.50 | $21.38 | $19.13 | $16.88 | $14.63 | $12.38 | $11.25 |
| ***************EMPLOYER CONTRIBUTIONS*************** | | | | | | | |
| WELFARE: | $5.40 | $5.40 | $5.40 | $5.40 | $5.40 | $5.40 | $5.40 |
| IU PENSION: | $1.50 | $1.50 | $1.50 | $1.50 | $1.50 | $1.50 | $1.50 |
| ANNUITY: | $0.50 | $0.50 | $0.50 | $0.50 | $0.50 | $0.50 | $0.50 |
| I. M. I. : | $0.20 | $0.20 | $0.20 | $0.20 | $0.20 | $0.20 | $0.20 |
| I. A. P. : | $0.11 | $0.11 | $0.11 | $0.11 | $0.11 | $0.11 | $0.11 |
| ******************************************************** | | | | | | | |
| TOTAL PACKAGE: | $30.21 | $29.09 | $26.84 | $24.59 | $22.34 | $20.09 | $18.96 |
| *************DUES CHECK-OFF IS 4.5% OF THE TOTAL PACKAGE************* | | | | | | | |
| DUES CHECK-OFF: | $1.36 | $1.31 | $1.21 | $1.11 | $1.01 | $0.91 | $0.86 |

As of November 1, 2004, members recruited into the Residential/Light Commercial Local will be placed at a wage rate based on an evaluation conducted bu the International Masonry Institute to determine applicants ability to command such wage.

Residential/Light Commercial members signed prior to November 1, 2004 will have the option, if desired to be evaluated and placed according to results from their evaluation.

Next percentage level of wage rate is reached when 600 hours is recorded for a member. Members may re-evaluate no sooner than 1 year after their last evaluation.

INTERNATIONAL UNION OF BRK ARLINE LLC
LOCAL
RESIDENTIAL A 299805 0024 NJ 1

The undersigned Employer has read and hereby approves the signed Collective Bargaining Agreement between the Building Contractors Association of New Jersey and the Masonry Contractors Association of New Jersey dated November 1, 2004, and Bricklayers and Allied Craftworkers Locals No. 4, No. 5 of New Jersey and Local No.2 of Delaware-New Jersey; and any successor Collective Bargaining Agreement subsequently negotiated between said parties and herewith accepts and becomes one of the parties thereto and agrees to be bound by all the terms and conditions of the effective Collective Bargaining Agreement and such successor Agreements as may be negotiated from time to time.

This Agreement and such successor Agreements shall be applicable within the territorial jurisdiction assigned to Locals No. 4, 5, & 2 by the International Union of Bricklayers and Allied Craftworkers. The life of this signed Independent Agreement is to be coextensive with the terms and conditions set out in the aforementioned Collective Bargaining Agreement, or as they shall be set out from time to time in any such successor Agreements as may be negotiated. The employer recognizes the Union pursuant to Section 9(a) of the National Labor Relations Act as the exclusive bargaining agent for all employees within the bargaining unit on all present and future sites within the jurisdiction of the Local Union.

The undersigned Employer further agrees to the payment of all Employee fringe benefit hourly contributions as specified in the effective Collective Bargaining Agreement, or as such hourly contributions may be increased or decreased in accordance with the provisions of the Collective Bargaining Agreement.

The undersigned Employer agrees to be bound by the applicable Declaration of Trust of each Trust Fund and hereby irrevocably designates as its' representative on the Board of Trustees such Employer Trustees together with their successors as selected in the manner provided within the applicable Agreement and Declaration of Trust of each Trust Fund and agrees to be bound by all actions taken by the Board of Trustees pursuant to the provisions of each Trust Fund and agrees to be bound by all actions taken by the Board of Trustees pursuant to the provisions of each Trust Fund, Agreement and Declaration of Trust instrument.

This signed Independent Agreement shall be binding upon the Employer named herein, and its' successor assigns, and no provision herein contained shall be nullified or affected in any manner as a result of a consolidation, sale, transfer, assignment, encumbrance, joint venture, or any combination or other disposition of the Corporation or Company.

Arline L.L.C
**Company Name**

308 Mickle Blvd
**Physical Street Address**

Camden                    N.J          08103
**City**                  **State**     **Zip Code**

856 342-9599          856 342-7788
**Telephone Number**       **Fax Number**

22-3414477
**Federal Identification Number**

_____
**New Jersey Employment Compensation Number**

_____
**Workmen's Compensation Insurance Carrier**

Please complete and remit to:
BAC Local #5, New Jersey
3261 Route 206, Suite 3
Bordentown, NJ 08505
(609) 324-0600
(609) 324-1605 - Fax

Initial if you have received a full copy of this Collective Bargaining Agreement _____

_Arline Pitts_        Treat Pitts           2/11/05
**Officers Signature**     **Printed Name**         **Date**

_Michael D Pernal_                          2-14-05
**Business Managers Signature**  **Printed Name**     **Date**

_Joe Pillo_          Joe Pillo             2-14-05
**Field Representatives Signature**  **Printed Name**  **Date**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARLINE LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-0218 (RMU)<br>)<br>)<br>)<br>)<br>) |

## JUDGMENT

The Summons and Complaint in this action having been duly served on the above-named Defendant on February 16, 2006, and the time for said Defendant to appear and defend herein having expired, and Defendant not having filed an Answer, and the Clerk having entered default, and the Plaintiffs having filed a declaration of a total amount due of $23,107.68, and Plaintiffs having moved for entry of judgment by default in that amount, it is hereby

ORDERED, ADJUDGED, AND DECREED that the final judgment in favor of Plaintiffs and against Defendant is hereby granted and ordered entered as the judgment in this action as follows:

1.    That Plaintiffs John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H.J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero and Ben Capp, Jr., all of whom are Trustees of, and sue on behalf of, the Bricklayers & Trowel Trades International Pension Fund ("IPF"), 620 F Street N.W., 9th Floor, Washington, DC 20004, recover from

Defendant, Arline LLC, 308 Mickle Boulevard, Camden, NH   08103, the amount due of $23,107.68;

2.    That Arline LLC be directed to submit all monthly reports and contributions that may come due the Plaintiffs subsequent to the filing of this judgment;

3.    That said judgment is without prejudice to the right of Plaintiffs to seek recovery of any past or future delinquencies, interest, damages and reasonable attorney's fees and costs that may be owing to the Plaintiffs from Arline LLC; and

4.    That Arline LLC comply with its obligation to make timely and full contributions to the IPF.

ORDERED, ADJUDGED AND DECREED that Plaintiffs have execution therefor.

Dated: _____        _____
                                              Ricardo M. Urbina
                                              United States District Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0218 (RMU) |
| | ) | |
| ARLINE LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## LOCAL RULE 7(K) STATEMENT

Pursuant to Local Rule 7(k), the following persons are entitled to be served with orders, judgments and stipulations:

Ira R. Mitzner, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C.  20006-5403
Telephone: (202) 420-2200
Facsimile    (202) 420-2201

Arline, LLC
398 Mickle Boulevard
Camden, NJ  08103